Again, Mr. Jacobs, you're touching both ends of the double-header today, I guess. Well, thank you. I feel equally at home coming from Delaware, from the Patent Office. I spent a lot of years there. So, if there is a record, I will introduce myself again, if there isn't. We have you, Ralph. Okay. Thank you. Then I won't spend time on that. So, if 7-Eleven and the V-Coms don't use the Internet, then we submit that the claims of the 457 patent are even more non-obvious than they would have been otherwise. Because now we're in 2010, and apparently nobody's using the Internet for ATMs. This patent, the 457 patent, was in patent prosecution for more than 10 years, and had more than 500 references cited. It spent almost as long in re-exam, and we think that none of the references raised in the re-exam contribute to what was in the patent. But I ask this court, and I understand it's difficult sometimes to place yourself back in time, to put yourself back in the time period of 1995-1996, because it's quite different. Today we take the Internet for granted. We know what it is. We think we know what it is. Just for reference, what is the exact priority date that we should be looking at? Sometime in 1996, correct? Well, the filing date of the application is 1996, Your Honor, but there was testimony from Mr. Barcelo in that, in the 7-Eleven case, that he could actually go back to 1995. You have a one-year grace period. He actually made some prototypes of the machine. So we think that 95-96 is the appropriate time period. We're not aware of any reference intervening between 95-96, but that's the period. In that time period, all ATMs were connected to banks by dedicated lines or telephone lines. This is a perfectly workable system. Everybody was happy with it. This is a case in which there was no long-felt need or want. There was no clamor for change. This is not a case where it's as simple changing the technology to take advantage of some new technology to advance a particular system or to solve a particular problem. There was no problem. ATMs were put in to reduce the number of human tellers that were in a bank. Their basic function was to dispense cash. So that's what we're looking at. It was not until the year 2000, four years after the 457 patent was filed, that an ATM with access to the Internet was first used, and that was Bank of America. In this re-exam, we have the PTO selectively relying on prior art, which it thinks supports its position, and ignoring all the prior art, which it thinks does not support its position, including the Visard reference, which itself relied upon. And then once we overcame the Visard reference, the patent office threw it away, and when we said, but you've got to look at that piece of prior art, because it's part of the prior art, they said, oh well, we're not relying on it anymore, so we're not going to look at it. You'd never allow an applicant to do that. If I was up here arguing on a patent office rejection, I said, your honors, you have to look at just this prior art we're relying on. You can't look at what the patent office is relying on, because we're not relying on it. And then I get laughed out of the courtroom. You have to look at what all the prior art teaches, and that's what we're asking this court to do. So there's the Visard reference, there's the Besser reference, there's the 146 reference, there's extensive declaration evidence from Dr. Suri discussing each of these references, what they teach, what they show. The patent office brushes that aside. It's not even criticized, it's just ignored. Then we have the patent office solicitor on this appeal taking the unfounded position that the claims that you heard us arguing about a few minutes ago don't actually cover what I said they covered, or even what Mr. Dunner said they covered. They actually cover a dial-up dedicated line ATM which communicates with the bank for banking transactions and accesses the internet for retail transactions, excluding banking transactions. I mean, even 7-Eleven didn't think of that interpretation of the claims. There's nothing in the specification that supports that. There is no argument ever made before the solicitor made that in his appeal brief. In our opening brief, we say what the claims are. In our reply brief... I'm getting a little confused here. Is it your view... You're taking issue with their construction, so you're saying that what this patent is about is connecting the ATM to the bank over the internet? Is that your position? Okay, so can you point me to what in the claim language or what in the specification you are relying on to support that interpretation? There is absolutely nothing in the specification. I mean, it's like pointing to a negative. There's absolutely nothing in the specification that would support arguing that the ATM's claim and the 457 patent are connected to a bank by a dedicated line or a phone line. The entire prosecution history, the entire appellate procedure on re-exam says the difference between this invention, it's in the brief, is an ATM having access to the internet, an internet interface. Okay, can you point... I mean, what are we talking about in the claim language? I don't know. Is that what you're referring to? Because I think there is, at least in the preferred embodiment, does the patent not talk about traditional ATM which suggests connecting over a dedicated modem? I think that's what the patent office told us. All right, claim 1 of the 457 patent. It says an integrated banking and transaction apparatus for use by a consumer comprising an automated teller machine... I'm sorry, what are you referring to now? 457 patent, you're right. Which claim? Claim 1. Claim 1 and Claim 9 we've already said are similar in scope. All right, so it's an automated teller machine and means for providing a retail transaction to the consumer through an internet interface to the automated teller machine. Then if you look in Claim 14, what is the very first retail transaction in Claim 14? It's a banking service. It's a suggestion that we now have, unbeknownst to the inventor, without any basis in the specification, we actually have a dial-up system for the bank but then we also access it through the internet. I mean, that doesn't make any sense. But beyond that, you can't read words into the claim that aren't even in the specification. It's bad enough to read words in the specification into the claim, but there's nothing in here. The whole invention is this is an improvement over the prior art and Figure 3B, if you look at it, the black box that my learned colleague referred to before with respect to the indefiniteness. Can that be a dedicated line? No, it's an internet interface. It's access to the internet. If you have an entire patent prosecution stretching over 10 years arguing the difference between this invention and prior art is we're replacing dedicated lines and dial-up modems with access to the internet. And then you go through re-examination and you're arguing exactly the same thing. Can it suddenly be that everybody overlooked the fact that we're really the old system? This is an advance in the art. It's not a retrogression. And the dial-up modems have their limitations. And if you think about the dial-up modem, you can access the branch. So if you went into Citibank in Washington and you wanted to take money out of your Citibank account, you could take it out. But under the old dial-up system, if you went into Citibank in Washington and you wanted to take money out of your Bank of America account in Atlanta, Georgia, you were out of luck because it couldn't access it. But by using the internet, this is Mr. Barcelo's idea before his time. He conceived of the ATM being able to perform a large variety of functions, one of which was banking but all kinds of other retail transactions. And in the other case, you saw the detailed list of sites that the ATM can access. Things it doesn't do is it doesn't access email. And there's nothing in the specification that suggests it accesses email. That's one of the reasons why we take issue with misconstruction of the claim. The main claim does not say an ATM in an internet kiosk. And you may say, well, that's kind of minor. But internet kiosks, totally divorced from ATMs, if you think about an internet kiosk, that's someplace you can go, you can access your email, you can surf the web, you can do all kinds of things. But if you look at an internet kiosk in the context of this patent, it is simply an internet interface. It doesn't access email, it doesn't surf the web. It allows you to perform the functions that are described in the patent. And so internet kiosk, when read within the scope of Claim 1, because it can't be broader than Claim 1 or be an improper dependent claim, has a different meaning. And it's like putting a gloss on internet access. An internet interface is fine. It provides access to the internet. But it doesn't say direct access to the internet. I guess I'm getting confused just because we're not really focusing or you're giving us a narrative which may or may not be very persuasive, but it seems a little bit divorced from the actual language of the claims and the specs. So when you're talking about Claim 1, it says an automated teller and a means for providing retail transactions. You're saying those are one and the same? Means for providing a retail transaction to the consumer through an internet interface means access to the internet. You have an ATM and access to the internet. That's what the claim covers. If you look at Claim 9, which is a method claim, it's providing an automated teller machine access to the consumer via the automated transaction machine and providing internet access to the consumer via the automated transaction machine and realizing a retail transaction. Nothing in there about dedicated lines. Well, it starts off by saying the first piece of that is providing automated teller machines access to the consumer via the automated transaction machine. Is there anything in the spec that declines that as being over the internet? Is that transaction with the bank as being over the internet as opposed to under traditional modem?  deals with that question? Figure 3B, Your Honor. Showing a network connection. There's nothing in the case. I can't give you any negative language. There's nothing in there other than the argument during the entire prosecution history of the original patent and the re-exam.     I'm a big fan of the patent. I'm a big fan of the patent. I'm searching the spec now. Is there any discussion in the specification of that figure? I can't feel my finger on it. Column 4, line 40. Combined ATM and internet retail terminal. Figure 3B illustrates the combined ATM and internet retail terminal. So let me save the rest of my time for rebuttal. Very well. Good morning. May it please the court. Good morning. Appellant broadly claims an apparatus that is an ATM and that also has an internet interface providing access to retail transactions. As the board found, Segresi teaches both of those limitations except that it discusses the information superhighway rather than the internet. I want to take a step back a minute and talk about why whether the claims cover an ATM that talks to the bank via the internet or talks to the bank via the traditional dedicated line or dial-up. Why that matters. It's because appellant's argument is that Segresi does not teach changing how the ATM communicates with the bank's computer. So in their view, their claims only cover an ATM that communicates with the bank's computer via the internet. And because Segresi doesn't expressly suggest changing that, Segresi can't be invalidating prior art. We think that throughout the re-examination appellant never expressly said our invention is a new way to communicate between the bank I'm sorry, between the ATM and the bank. Well, can we put aside for a moment the wavering? Right, whether they argued it or not. If the court decides to address it, that argument is incorrect. Even if an ATM that communicates with the bank's computer via the internet is within the scope of the claims, it's also the case, based on a proper reading of the claims and the specification, that the claims at least cover an ATM that communicates with the bank's computer using the traditional means. The easiest way to see that is to look at the written description. And the theory being that if the claim language is broad enough to cover both, then Segresi covers at least one of the ways of... Right, correct. And the board specifically said it doesn't matter whether Segresi discusses changing how the ATM communicates with the bank, because the ATM and Segresi could still use the traditional dedicated line for talking to the bank and use the internet for these other retail transactions. So if the claim is broad, you say if the claim is broad enough to cover both, then Segresi is well, not anticipating, but anticipating. Almost anticipating, yes. So, as Judge Prost was discussing with Mr. Jacobs, the written description doesn't talk about how the ATM communicates with the bank at all, except for one place, which is in column 3, lines 17 through 19, where it describes the ATM of the invention as an ATM... I'm sorry, lines 17 through 19, column 3, of the 457 patent. It describes an ATM, the ATM of the invention, as being an ATM with traditional ATM hardware, software, and banking network connections. And as the appellant tells us throughout the blue brief, traditional banking network connections is either a dedicated line from the ATM to the bank, or dial-up access. And looking at the claims, there's also nothing in there that talks about how the ATM communicates with the bank. But I think that, you know, his answer to that seems to be that it's included. I mean, it's not his burden to show that he explicitly excluded it. If it's included, there are all these references to the Internet. Well, even if it is included, it doesn't mean the claim is limited. to that way of communication between the ATM and the bank. In other words, you're saying as long as he hasn't excluded the traditional means of communication, then there's prior art that covers it. That's correct. And turning to the board's decision on page 816, where the board addressed that argument regarding SUBREZE. As I referred to earlier, about the middle of the page, the board says, however, SUBREZE does envision an expansion of the traditional ATM into financial and other services, such that those traditional banking services could still be utilized through dedicated lines and other services. I think that's referring to the other various retail transactions through different media, which, as SUBREZE calls it, is the information superhighway. Are there any questions regarding the scope of the claims as to how the ATM communicates with the bank? If there are no more questions, I'll move on briefly to the other question about the information superhighway and the internet. The board found that at the very least, the information superhighway and the internet were known alternatives. Appellant argues that they were completely different, but the evidence of record really just does not support that. Are there any particular questions about that? They didn't get to it too much in their argument. I found this is probably an embarrassing display of my own ignorance about this area, but I had always thought information superhighway was sort of a metaphor for anything that had the effect of communicating information broadly. Does the record reflect a more specific type of technology that would be called the information superhighway as of 1995? I think it is. I think you're right, Mr. Royston, that it's fairly broad. There was a definition that was in the record that referred to it as the global network of telecommunications and information technologies. So that basically means anything that serves to connect people broadly, right? There wasn't any particular hardware in place at the time that one would have pointed to and said, oh, well, there it is. It's over there. The information superhighway can be found over there. I think it was more of the general idea of interconnectivity among people and machines. If you look at Cibrizi and Cibrizi's reference to the information superhighway though, it sounds pretty much what you would say the internet is. It's pretty brief. It's very brief, but it says an ATM is one public access window into a ubiquitous financial network, an endless lattice of financial and other services that will eventually be part of the information superhighway. You're talking about the interconnection of those networks, financial networks and other networks that is pretty close to what I think we would call the internet. If anything, the internet perhaps is a subset or a specific implementation of the information superhighway. And you've got Odom, right? Yes, and Odom specifically says that the internet has become the information superhighway of choice at that point in time, at the time of the invention. Does the court have any further questions regarding that? In that case, the appellant didn't discuss any of the secondary considerations, so we rely on our brief for that argument, and because neither of their main arguments regarding the merits of the prior art rejection are correct, the board's decision should be affirmed. Thank you. We'll hear rebuttal now from Mr. Jenkins. Thank you, Your Honor. I'd like to start off with the fact that the board never suggested that the claims met what the solicitor suggested, and it's well settled that the solicitor can't raise a new ground of rejection or a new argument on appeal in the Thrift case and in Raibab. You have to look at all of the prior art, as I said before. This is not a situation like a low Yogi Berra direction where he says, when you come to a fork in the road, take it. You have to look at Visser. You have to look at Vesser. Vesser has a chapter on the Information Superhighway. It's entitled Internet versus the Information Superhighway. Does anybody talk about the Information Superhighway today? Does anybody know what it is? I mean, we're going back to 1995, 1996, and what about the NTIA definition of Information Superhighway? That says it resembles broadcast TV, and other definitions of the Information Superhighway talk about it being TV, computers, handheld devices. Are those able to dispense cash? I mean, I wish my cell phone could dispense cash. That would be very convenient, but it doesn't. So what is the Information Superhighway? I think Your Honor, Judge it's some amorphous concept back then, but if you look at the prior art, fairly red, and you must read all of it, and you look at Dr. Suri's declarations, which were totally ignored, and I'm not aware that the Patent Office procedure has now changed, and you can take a declaration from someone and simply ignore it and move on without something else. He has analyzed all these references. He's commented on them, and what do we have on the other side? Patent Office says, well, we don't agree with that. We think it's something different. And by the way, don't look at these references, because we're not relying on them. Even though we relied on VISIT before, we're not relying on it anymore. So, we respectfully suggest the new argument as to what the claims mean on appeal must be rejected out of hand as a new argument. The Board never said that. The entire prosecution history never said that. And if you look back at page 5 of our reply brief, we go back over various citations in the re-exam where we've said again and again and again, this invention distinguishes from the prior art, which was dial-up modems, dedicated modems. This is an ATM connected to the Internet. It's an ATM having access to the Internet. Entire page 5, second full paragraph. We think it's absolutely clear. And to argue suddenly on a dedicated phone line going back as a retrogression in the art is really not a well-founded argument. So, let me just make sure I understand your position as to the scope of the claim. Are you saying that this claim would not read on a system in which you had an automatic teller machine, which had a dedicated line to the bank, but also had an Internet connection over which it conducted retail transactions? It would not read on that part of the system, which has a dedicated line to the bank. Well, if it didn't read on that part of the system, it wouldn't read on that system, correct? Depends on... quite possibly not. Okay. Very well. Thank you very much. Thank you. The case is submitted.